UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA S BOYER, et al.,<br>        Plaintiffs,<br>    v.<br>ABBOTT VASCULAR INC.,<br>        Defendant. | Case No. 23-cv-00838-AGT<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 52 |

Abbott Vascular has moved to dismiss in part Rebecca Boyer's first amended complaint. For the reasons that follow, the Court will grant the motion with leave to amend.

\* \* \*

1. <u>Choice of Law</u>. Based on what Boyer has alleged, the Court concludes that her claims are governed by Virginia law, not California law. Her claims arise from the tragic death of her husband, Roy Boyer, following heart surgery. During the surgery, the distal portion of a coronary dilatation catheter broke and got stuck in Roy's artery. Attempts to remove the catheter were unsuccessful and Roy passed ten days after the surgery. *See* Dkt. 42, FAC ¶¶ 2, 9–18.

Virginia's interest in Boyer's claims is significant. Roy was a resident of Virginia, and the surgery that resulted in his death occurred in Virginia. *See* FAC ¶¶ 1, 9. "Virginia, like every other state, has a keen interest in regulating conduct by imposing liability for harm occurring

within its borders." *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 345–46 (E.D.N.Y. 1999).

California also has an interest in Boyer's claims. Abbott Vascular, the maker of the catheter, has its principal place of business in California. *See* FAC ¶ 4. California has "an interest in deterring unlawful conduct by its companies." *Hillard v. TABC, Inc.*, 2017 WL 6940540, at *6 (C.D. Cal. Dec. 18, 2017). Even so, California's connection to the claims isn't as strong as Virginia's. The complaint doesn't allege that the catheter was designed in, or manufactured in, California. It is thus possible that none of the events giving rise to the claims (e.g., negligent design, negligent manufacturing, failure to warn) occurred in California.[1]

California's interest is outweighed by Virginia's. "California courts have tended to apply the law of the place of the injured's domicile, finding that state has the greatest interest." *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1130–31 (C.D. Cal. 2019) (simplified). And California's interest in applying its laws is reduced when, as here, the defendant's tortious conduct isn't linked to California. *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010) ("California's interest in applying its laws . . . in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California."). The Court will apply Virginia law.

2. <u>Strict Product Liability</u>. Under Virginia law, Boyer's strict product liability claim cannot proceed. "[T]he doctrine of strict liability . . . is not recognized in Virginia." *Harris v. T.I., Inc.*, 243 Va. 63, 71 (1992). This claim is dismissed.

---

[1] In her opposition brief, Boyer asserts that the catheter *was* designed and manufactured in California. *See* Dkt. 55 at 3. "The Court may not consider new allegations . . . alleged for the first time in an opposition to a motion to dismiss." *Canatella v. Castro*, No. 13-CV-05937-HSG, 2015 WL 5818070, at *5 (N.D. Cal. Oct. 6, 2015). Also, although not relevant to the motion to dismiss, the Court notes that Abbott Vascular disputes, at least in part, Boyer's assertion. *See* Dkt. 58 at 5 (stating that the catheter was manufactured in Costa Rica, not California).

3. <u>Negligence</u>. Boyer's negligence claim will also be dismissed to the extent the claim is based upon (i) a failure to warn Roy, (ii) a failure to warn Roy's doctors, or (iii) a failure to recall the catheter. Abbott Vascular had no duty to warn Roy directly about the catheter's risks. "Under the Learned Intermediary Doctrine, manufacturers of prescription medical products have a duty only to warn physicians, rather than patients, of the risks associated with the use of the product." *Talley v. Danek Medical, Inc.*, 7 F. Supp. 2d 725, 730 (E.D. Va. 1998). Abbott Vascular also had no duty under Virginia law to recall the catheter. "Virginia law does not recognize a duty to recall." *Powell v. Diehl Woodworking Machinery, Inc.*, 198 F. Supp. 3d 628, 634 (E.D. Va. 2016).

As for warning Roy's doctors, Abbott Vascular had a duty to warn them about the catheter's risks, but Boyer hasn't plausibly alleged that Abbott Vascular breached that duty. Boyer alleges that Abbott Vascular gave "inadequate . . . warnings," FAC ¶ 31, but this is a legal conclusion. She hasn't identified the warnings that were given or explained why the warnings were deficient. "A plaintiff's pleadings are insufficient when they do not identify the warning that her doctor received [or] allege how it was inadequate . . . ." *Marrufo v. Ethicon, Inc.*, 2020 WL 7680562, at *3 (W.D. Tex. Nov. 20, 2020). The negligence claim is dismissed in part.[2]

4. <u>Implied Warranty</u>. To the extent that Boyer's implied warranty claim is based on a design-defect theory, the claim will be dismissed. Abbott Vascular maintains that such a theory is barred by comment k to the Restatement (Second) of Torts § 402A. Boyer hasn't suggested otherwise. Instead, she notes that "comment k only applies to claims of implied warranty under theories of design defect," not under theories of manufacturing defect or failure to warn. Opp'n,

---

[2] Abbott Vascular hasn't moved to dismiss Boyer's negligence claim to the extent the claim is based upon negligent design or negligent manufacturing. *See* Dkt. 68 at 1.

3

Dkt. 55 at 12 (emphasis omitted). The Court grants Abbott Vascular's motion to dismiss the implied warranty claim insofar as the claim is based on a design-defect theory.[3]

5. <u>Express Warranty</u>. The Court also grants Abbott Vascular's motion to dismiss Boyer's express warranty claim. To plead this claim, Boyer must identify the "specific warranties" that Abbott Vascular made. *Porter v. DePuy Orthopaedics, Inc.*, 2019 WL 3979656, at *10 (E.D. Va. Aug. 6, 2019). She hasn't done so. She alleges only generally that Abbott Vascular "made express warranties regarding the Catheter and its component parts," and that in "reliance upon such warranties, Johnston Memorial Hospital purchased and employed [the] Catheter to perform a coronary catheterization." FAC ¶¶ 41–42. "[Boyer's] failure to identify any specific statements upon which an express warranty could be based dooms the claim." *Bell v. True Mfg. Co.*, 2020 WL 10095356, at *4 (E.D. Va. Sept. 16, 2020).

6. <u>Survival</u>. Boyer's survivorship claim will also be dismissed. There is no survivorship cause of action in Virginia. Rather, a "survivorship action . . . defers to the wrongful death statute as the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of his or her injuries." *Smith v. Town of S. Hill*, 2020 WL 1324216, at *28 (E.D. Va. Mar. 20, 2020) (simplified). Abbott Vascular's motion to dismiss the survivorship claim is granted.

7. <u>Wrongful Death</u>. Lastly, the Court grants Abbott Vascular's motion to dismiss Boyer's wrongful death claim. "Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death." *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). A wrongful death "claim" cannot go forward, but Boyer may still exercise her right, under

---

[3] Abbott Vascular hasn't moved to dismiss Boyer's implied warranty claim to the extent the claim is based upon theories of failure to warn or a manufacturing defect. *See* Dkt. 68 at 1–2.

Virginia's wrongful death statute, "to enforce the decedent's claim for any personal injury that caused death." *Id.*

\* \* \*

Abbott Vascular's motion to dismiss is granted, with leave to amend. The Court anticipates that Boyer may want to conduct some discovery before she amends her complaint. Some early discovery would be helpful, especially so that the choice-of-law issue can be definitively resolved. The Court will thus give Boyer sixty days to amend her complaint. If she chooses to amend, she must file her amended complaint by August 28, 2023. The initial case management conference is rescheduled to September 15, 2023.

**IT IS SO ORDERED.**

Dated: June 29, 2023

_____
Alex G. Tse
United States Magistrate Judge